New London District Court
No. 2001-573

THE STATE OF NEW HAMPSHIRE

v.

LUCINDA R. PARMENTER

Argued: October 17, 2002
Opinion Issued: December 31, 2002

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Robert J. Moses*, of Amherst, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Lucinda R. Parmenter, was convicted after a bench trial in New London District Court (*McSwiney*, J.) of driving while intoxicated (DWI), first offense, *see* RSA 265:82 (Supp. 2002). She appeals, arguing: (1) that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that she was under the influence of intoxicating liquor; and (2) that the trial court exceeded its authority when it required her to attend eight self-help meetings. We affirm the conviction, but vacate the sentence and remand.

A reasonable trier of fact could have found the following facts. On July 20, 1999, at approximately midnight, Officer James Brace was on routine patrol in Henniker. While the operation of the defendant's car was unremarkable, he noticed that the plate light of the car was defective, and accordingly stopped the car.

Officer Brace explained to the defendant why he had stopped her and asked for her driver's license and registration. The defendant provided the documents and stated that she was the designated driver for the evening. Officer Brace returned to his cruiser with the documents, "wrote out a quick warning for the plate light," and returned to the defendant's car. As he approached, the defendant stated, "Officer, I can't lie to you, I have had something to drink tonight."

In response to the officer's inquiry, the defendant stated that she had had three White Russians that evening, the last approximately two and one-half hours prior to the stop. Officer Brace noticed that while the defendant's eyes were not bloodshot and her speech was normal, her face was flushed, and her eyes were glassy.

Officer Brace proceeded to administer Field Sobriety Tests (FSTs). He administered the first, a Horizontal Gaze Nystagmus test (HGN test), while she was still seated in her car. He explained how the test was to be performed, and the defendant said that she understood the instructions. Nevertheless, she continually moved her head while following Officer Brace's pen, and took her eyes off the pen several times. Officer Brace had to stop the test several times to remind the defendant of the instructions. It appeared to Officer Brace that the defendant was simply not following his instructions. During the test, Officer Brace noticed the odor of alcohol on her breath.

Officer Brace asked the defendant to step out of the car for additional FSTs. Officer Brace again attempted to administer the HGN test, but the defendant continually moved her head and took her eyes off the pen. The police officer told her that she moved her head and took her eyes off the pen, and the defendant affirmed that she was not following the directions.

Officer Brace inquired how far the defendant had gone in school. When she responded that she had only gone as far as the tenth grade, he decided not to administer a test which would have required her to count backward. Rather, he asked her to recite the alphabet, starting with "E" and ending with "S." Rather than attempt the test, the defendant stated simply, "Let's not do that one."

Thereafter, Officer Brace explained and demonstrated the "finger to nose" test. The test required the defendant to tilt her head back, close her eyes, and upon the command of "right" or "left," bring her hand up from the side of her body and touch the tip of her nose with the tip of her finger. The defendant brought her head down and opened her eyes after the first attempt, and missed her nose twice.

Because the defendant was considerably overweight, Officer Brace decided that the "one leg stand test" would be inappropriate. He did, however, administer the "walk and turn" test. Officer Brace concluded that this test would be appropriate, despite the defendant's weight, because he had watched her walk, and saw that she was able to walk normally. Officer Brace explained to the defendant that she was to take nine heel to toe steps in a line, turn around, and take nine heel to toe steps back, with her hands at her sides, and without stopping. He then demonstrated how to do the test. The defendant failed to make the heel to toe touch on any of the steps, stopped at the far end, and turned incorrectly.

Based upon the defendant's admission to having drunk alcohol and her poor performance on the FSTs, Officer Brace concluded that the defendant was impaired by alcohol, placed her under arrest, and transported her to the Henniker police station.

At the police station, Officer Brace explained to the defendant her administrative license suspension rights and requested that she take a breathalyzer test. The defendant explained that she had not eaten, was on eight medications, and had been advised by her doctor not to take the test. She also said that she had learned from the television program *20/20* that one drink could cause a person to fail the test. Officer Brace explained to her that this was not true. The defendant nevertheless declined the test, stating, "I know I'm over and you know I'm over."

A bench trial was held in the New London District Court. The defendant moved to dismiss the charges at the close of the State's case. The motion was denied, and the defendant called two witnesses, Roberta Senecal and the defendant's daughter, Stephanie Jones. Senecal testified that she was with the defendant at a Chinese restaurant the evening of the stop, and that the defendant had ordered a White Russian at about 6:30 or 7:00, but only had a few sips because she was having stomach problems. According to Senecal, the defendant ordered another White Russian at about 7:30 or 8:00, but again had only a couple of sips. Jones testified that when she picked up the defendant from the police station at approximately 1:00 a.m., the defendant did not appear to be impaired. She also testified that the defendant's face usually appeared flushed.

The trial court found the defendant guilty and imposed a fine of $350, with a penalty assessment of $70. The court also revoked the defendant's driver's license for a period of two years, "unless [the court restored the license] after 90 days after successful completion of the impaired driver intervention program and any treatment plan they recommend, if there is any." The court also required the defendant to attend at least eight self-help meetings.

We address first the defendant's challenge to the sufficiency of the evidence. "To prevail on a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, evaluating all of the evidence and its reasonable inferences in the light most favorable to the State, could conclude beyond a reasonable doubt that he had committed the charged crime." *State v. Hammell*, 147 N.H. 313, 319 (2001).

■ In order to prove the defendant guilty of driving while intoxicated, the State was required to prove beyond a reasonable doubt that the defendant drove or attempted to drive a vehicle upon a way while she was

"under the influence of intoxicating liquor." RSA 265:82, I(a) (Supp. 2002). To prove that the defendant was "under the influence of intoxicating liquor," the State "need only prove impairment to any degree." *State v. Taylor*, 132 N.H. 314, 316 (1989).

On appeal, the defendant argues that there was insufficient evidence to prove that she was under the influence of intoxicating liquor. We disagree. The defendant admitted to Officer Brace that she had had three White Russians about two and one-half hours before he stopped her car, the officer observed that the defendant's "face was flushed and her eyes were glassy," and that there was an odor of alcohol on her breath. The defendant also failed to follow instructions, and performed poorly on a number of FSTs. After she was arrested and taken to the police department, the defendant refused to submit to a breath test, stating, "I know I'm over and you know I'm over."

The defendant argues that she declined to take the breath test because she had learned from television that one drink could put her over the legal limit, and not because of any realistic expectation that the test would reveal a blood alcohol level over the legal limit. According to the defendant, while her refusal to submit to chemical testing is admissible as evidence against her at trial, *State v. Cormier*, 127 N.H. 253, 257-60 (1985), the court is also required to consider any explanation given by the defendant regarding the decision to decline the testing.

We conclude that to the extent that the trial court concluded that the defendant had refused testing because she knew she was over the legal limit, such a conclusion is supported by the record. The evidence shows that when the defendant told Officer Brace that she believed one drink could put her over the limit, Officer Brace explained to her that what she had learned from television was not true, and why. It was after he had done so that the defendant stated that both she and the officer knew she was over the limit.

The defendant points to a number of other facts, including facts elicited from defense witnesses, to support her argument that the State failed to prove that she was impaired by alcohol. She also argues that she was not an appropriate candidate for certain of the FSTs because she was overweight and had been educated only up to the tenth grade. Even assuming, without deciding, that these facts would tend to rebut the State's evidence and support the conclusion that the defendant was not impaired by alcohol, any conflicts in the trial evidence are for the fact finder to resolve. *See State v. Sliz*, 124 N.H. 389, 391 (1983).

We conclude that there was sufficient evidence to prove beyond a reasonable doubt that the defendant was impaired by alcohol.

We turn now to the defendant's argument that her sentence should be set aside. After hearing arguments from the State and the defendant, the court sentenced the defendant as follows:

> The Court sentences you to pay a fine of $350 with a penalty assessment of $70 for a total of four twenty. Your license and right to operate a motor vehicle in the State of New Hampshire is revoked for a period of two years, unless you're restored earlier by the Court after 90 days after successful completion of the impaired driver intervention program and any treatment plan they recommend, if there is any. And also compliance with requirements of proof of financial responsibility. I'm going to require that you attend . . . eight self-[help] meetings, furnishing proof of attendance on forms that will be provided by the court, by November 10th, 2001. Self-help meetings, examples of those would be AA or NA meetings.

On appeal, the defendant argues in her brief that the portion of her sentence imposed by the court which conditions reinstatement of the defendant's license upon satisfactory completion of an impaired driver intervention program and posting financial responsibility exceeds the authority of the court. The defendant also asserts a number of constitutional arguments regarding the sentence imposed by the trial court. Because the defendant did not make these arguments during the proceedings below, we decline to address them. *See State v. Nutter*, 135 N.H. 162, 163-64 (1991). We therefore consider only the defendant's argument that the trial court exceeded its statutory authority when it required the defendant to attend eight self-help meetings.

Whether the trial court exceeded its statutory authority is a question of law, which we review *de novo*. When presented with a question of statutory construction, we begin with an examination of the statutory language. *Petition of The State of New Hampshire (State v. Langille)*, 139 N.H. 705, 707 (1995). "When interpreting two statutes which deal with a similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." *Id.* (quotation omitted).

In this case, two statutes address the consequences for defendants convicted for the first time of DWI.

Pursuant to RSA 265:82-b, I(a) (Supp. 2002), any person who is convicted of DWI, first offense, under RSA 265:82 shall be "guilty of a violation," be "fined not less than $350," and shall have his or her license or privilege to drive "revoked for not less than 90 days and, at the discretion

of the court, such revocation may be extended for a period not to exceed 2 years."

Pursuant to RSA 263:65-a, the director of the division of motor vehicles (DMV) "shall not restore the license or driving privilege of any person whose license or privilege has been revoked or suspended pursuant to RSA 265:82 ... until such person has furnished proof of successful completion of an impaired driver intervention program ...." RSA 263:65-a, I (Supp. 2002). "'[S]uccessful completion' means meeting further counseling requirements, if any, arising out of the final evaluation given to the offender at the [impaired driver intervention program] ...." RSA 263:65-a, II (Supp. 2002).

■ The plain language of these statutes makes clear that if a person is convicted of DWI, first offense, a court will impose a fine and license suspension within the statutory limits. In addition, as an administrative matter, the DMV will not restore the individual's driver's license until he or she has completed the impaired driver intervention program (IDIP). If, at the completion of the IDIP, it is recommended that the individual receive additional counseling, the person must complete the counseling in order to have his or her license restored.

Nothing in the plain language of RSA 265:82-b confers upon the district court the authority to require a person convicted for the first time of DWI to receive additional counseling. Indeed, the legislature in RSA 263:65-a has specifically granted the IDIP the authority to determine whether such an individual is in need of further counseling.

The State argues that the district court's authority to require the defendant to attend eight self-help sessions derives not from RSA 265:82-b, but from the general sentencing provisions of RSA chapter 651. According to the State, because DWI, first offense, is defined as a violation, the general sentencing provisions for violations contained in RSA chapter 651 apply. See RSA 651:2, III-a (Supp. 2002). The State argues that RSA chapter 651 authorizes a district court to sentence a defendant to a conditional discharge, and that one condition the court may impose is to "requir[e] the defendant to attend counseling or any other mode of treatment the court deems appropriate...." RSA 651:2, VI(a)(2) (Supp. 2002).

The State concedes that in this case the district court did not explicitly impose a conditional discharge. The State asserts, however, that the district court's order implicitly imposed a conditional discharge, which allowed the defendant to discharge a portion of her sentence (i.e., reduce the license revocation period to ninety days) upon completion of the eight self-help sessions. Even if we assume that RSA chapter 651 authorizes the

imposition of a conditional discharge in DWI, first offense cases, the record does not support the conclusion that a conditional discharge was imposed in this case. The trial court did not indicate on the sentencing form that the sentence would be subject to conditional discharge.

Because the only authority upon which the State relies is RSA 651:2, VI, and because we conclude that the district court did not impose a conditional discharge, we vacate the defendant's sentence and remand for resentencing.

*Conviction affirmed; sentence vacated; remanded for resentencing.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.