Henniker District Court
No. 2003-628

THE STATE OF NEW HAMPSHIRE

v.

JOHN D. WIGGIN

Argued: July 15, 2004
Opinion Issued: August 26, 2004

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Law Office of Mark Stevens*, of Salem (*Mark Stevens* on the brief and orally), for the defendant.

GALWAY, J. The defendant, John D. Wiggin, was convicted after a bench trial in the Henniker District Court (*Scheffy*, J.) of driving under the influence of intoxicating· liquor. *See* RSA 265:82, I(a) (Supp. 2003). He appeals the court's denial of his motions to suppress and to dismiss. We affirm.

The record of the hearing supports the following facts. On February 2, 2003, at approximately 1:30 a.m., Henniker Police Officer Neal Martin responded to a burglar alarm call from a market. Upon arriving at the market, he parked in front and began investigating the cause for the alarm. He initially checked the front and side doors of the market but found nothing that would have activated the alarm. Because it had snowed sporadically that night, leaving snow and slush on the ground, he looked for tracks in the parking lot but found none.

The building housing the market also contained a restaurant, which was about to close. The officer questioned the restaurant patrons and employees as to whether they knew of any cause for the alarm, but none did. Not yet having found the cause, the officer called the owner of the market, sat in his cruiser facing the storefront to keep an eye on it, and waited for the owner to arrive.

While waiting in his unmarked cruiser, the officer saw the defendant's car drive around to the back of the building and park near a dumpster. He realized that this was not the owner of the market, and he followed the car around the building. He parked his cruiser behind the already stopped car and, to identify himself as a police officer, flashed his blue lights.

The officer, who was in uniform, approached the car, and the defendant rolled down his window. When the officer requested the defendant's identification, he immediately noted an odor of alcohol, as well as the defendant's bloodshot, glassy eyes and flushed face. The officer asked the defendant to step out of the car to perform five field sobriety tests (FSTs), which the defendant failed.

Based upon Officer Martin's observations and training, he determined that the defendant was "impaired" by alcohol, placed him under arrest, and transported him to the Henniker police station. At the station, Officer Martin explained to the defendant his administrative license suspension rights and requested that he take a breathalyzer test. The defendant refused the test and was charged with driving under the influence. *See id.*

During trial, the defendant moved to suppress all evidence, arguing that he was seized in violation of his State and federal constitutional rights. Further, at the close of the State's case, the defendant moved to dismiss the charges, arguing that the evidence was insufficient to support a finding of guilt. The court denied both motions and found the defendant guilty. *See id.* This appeal followed.

Concerning his motion to suppress, the defendant argues that he was seized upon the activation of the officer's blue lights, and that his seizure was unconstitutional pursuant to the protections of the Fourth Amendment of the United States Constitution as well as Part I, Article 19 of the State Constitution. Specifically, he argues that "the seizure was not based on a reasonable articulable suspicion that he had committed a crime."

Both parties agree that the officer's actions constituted a seizure of the defendant. Whether the defendant was seized at the moment the officer activated the blue lights, however, is irrelevant because the defendant was already parked, and nothing is alleged to have happened between the time that the officer flashed his blue lights and the time when the defendant rolled down his window to speak to the officer. The more relevant issue is whether the seizure was lawful—that is, whether the officer had reasonable, articulable suspicion that the defendant was involved in criminal activity sufficient to justify the seizure. *See Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). We conclude that he did.

We first address the defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), citing federal opinions for guidance only, *id.* at 232-33. In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous. *State v. Wallace*, 146 N.H. 146, 148 (2001). Our review of the trial court's legal conclusions, however, is *de novo. Id.*

To undertake an investigatory stop, a police officer must have reasonable suspicion, based upon specific, articulable facts taken together with rational inferences from those facts, that the particular person stopped has been, is, or is about to be engaged in criminal activity. *State v. Turmel*, 150 N.H. 377, 380 (2003); *see Terry*, 392 U.S. at 20-21. The suspect's conduct and other specific facts must create a "significant possibility of criminality," and the articulated facts must lead to somewhere specific, not just to a general sense that this is probably a bad person who may have committed some kind of crime. *State v. Vadnais*, 141 N.H. 68, 70 (1996) (quotation omitted). To determine the sufficiency of the officer's suspicion, we must consider the facts he articulated in light of all of the surrounding circumstances. *See Turmel*, 150 N.H. at 381.

Here, the officer had reasonable, articulable suspicion to seize the defendant. When the defendant's car first pulled into the parking lot, Officer Martin was involved in an ongoing investigation of a potential burglary. The officer was investigating the alarm at about 1:30 a.m. He had checked the building's doors and looked for tracks in the snow. At the adjoining restaurant, he had questioned employees and patrons concerning the cause for the alarm. Before the officer had determined the cause of the alarm, the defendant's car pulled into the parking lot, drove behind the building, and parked near the dumpster. Looking at the totality of the circumstances, we conclude that these case-specific, objective facts support a finding that the officer had reasonable, articulable suspicion that the defendant had been, was, or was about to engage in criminal activity sufficient to justify the seizure of the defendant. *See id.* at 380.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See id.* at 382; *Terry*, 392 U.S. at 20-21. Accordingly, we reach the same result under the Federal Constitution.

We next address the defendant's challenge to the sufficiency of the evidence raised in his motion to dismiss. On appeal, the defendant argues that the evidence presented at trial was insufficient to support a finding that he was under the influence of intoxicating liquor. Specifically, he argues that he failed the tests not because of impairment by alcohol, but because of physical impairments and poor road conditions. We disagree.

To prevail on a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, evaluating all of the evidence and its reasonable inferences in the light most favorable to the State, could conclude beyond a reasonable doubt that he had committed the charged crime. *State v. Parmenter*, 149 N.H. 40, 43 (2002). In order to prove the defendant guilty of driving while intoxicated, the

State was required to prove beyond a reasonable doubt that the defendant drove or attempted to drive a vehicle upon a way while he was "under the influence of intoxicating liquor." *Id.* at 43-44 (quotation omitted); RSA 265:82, I(a). To prove that the defendant was "under the influence of intoxicating liquor," the State "need only prove impairment to any degree." *Parmenter*, 149 N.H. at 44.

Here, the following evidence was sufficient to find the defendant guilty of driving under the influence. Officer Martin testified that he saw the defendant drive on a way, and when he approached the defendant, he noticed an odor of alcohol and observed the defendant's flushed face and bloodshot, glassy eyes. By the defendant's own admission, he had consumed a few beers—one as late as 11:00 p.m. The officer also testified that the defendant failed all five FSTs. Specifically, the officer testified that in administering the Horizontal Gaze Nystagmus (HGN) test, after explaining to the defendant not to move his head and to follow the pen with his eyes, the defendant moved his head on the first two attempts. After explaining the test a third time, the officer noted impairment when the defendant performed the test. During the alphabet test, in which the officer asked the defendant to recite the alphabet from E to T, the defendant only recited to K and then confused the letters. In the counting test, the officer asked the defendant to count backwards from forty-five to twenty-three. The officer testified that the defendant lost count somewhere in the twenties and that he "rambled a little bit with numbers." The officer then demonstrated the one-legged stand test and explained to the defendant that he should stand with one foot off the ground about six inches, keep his hands to his side, look down at his foot, and count to thirty until he was told to stop. The defendant was unable to keep his foot off the ground, used his arms for balance, and put his foot down after only three or four seconds. Finally, during the Romberg balance test, the defendant was instructed to stand with his hands by his side, tilt his head back slightly, and close his eyes for an estimated thirty seconds. The defendant opened his eyes within approximately five seconds and swayed while his eyes were closed. After the defendant was arrested and taken to the police station, he refused to submit to a blood-alcohol test.

The defendant testified to a number of facts to support his argument. He claimed, among other things, that difficulty with contact lenses and snowy conditions affected his ability to perform the HGN test; that ankle and knee problems and deep snow affected his ability to perform the balancing tests; that the officer told him to stop on the alphabet test; and that the officer's instructions concerning the counting test confused him. Even if these facts would tend to rebut the State's evidence and support

the defendant's position that he was not impaired by alcohol, any conflicts in the evidence are for the fact finder to resolve. *See id.*

We conclude that the evidence was sufficient such that a rational trier of fact could conclude beyond a reasonable doubt that the defendant was guilty of driving under the influence.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.