Strafford
No. 2007-279

THE STATE OF NEW HAMPSHIRE

v.

DAVID A. MACDONALD

Argued: January 16, 2008
Opinion Issued: March 12, 2008

*Kelly A. Ayotte*, attorney general (*Esther B. Piszczek*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, David A. MacDonald, appeals his conviction in Superior Court (*Fauver*, J.) for driving while intoxicated, *see* RSA 265:82 (2004) (repealed, amended and reenacted as RSA 265-A:2, I (Supp. 2007) (effective January 1, 2007)). We affirm.

The record supports the following. On February 12, 2006, at approximately 1:15 a.m., Officer Christopher Meyer of the Dover Police Department observed the defendant's car speeding. Meyer stopped the defendant and asked for his license and registration. During his

interaction with the defendant, Meyer determined that the defendant might be under the influence of alcohol. Meyer asked the defendant to step out of the car to perform three field sobriety tests, all of which he failed. Based upon his observations and training, Meyer concluded that the defendant was under the influence of alcohol, placed him under arrest, and transported him to the police station.

On appeal, the defendant argues that the evidence was insufficient to support a finding that he was under the influence of intoxicating liquor. The parties dispute whether the evidence in this case was solely circumstantial or consisted of both circumstantial and direct evidence. We need not resolve this dispute because, even if we assume, without deciding, that the evidence was solely circumstantial, it was sufficient to convict him of driving while under the influence of intoxicating liquor.

To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Evans*, 150 N.H. 416, 424 (2003). When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. *Id.* Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. *Id.*

RSA 265:82, I, provides, in pertinent part: "No person shall drive or attempt to drive a vehicle upon any way . . . while such person is under the influence of intoxicating liquor." To prove that the defendant was "under the influence of intoxicating liquor," the State need only prove that the defendant was impaired to any degree. *State v. Wiggin*, 151 N.H. 305, 309 (2004).

Considering the evidence and all inferences to be drawn from it in the light most favorable to the State, we hold that a rational juror could have found that the defendant was under the influence of alcohol beyond a reasonable doubt.

Meyer testified that at approximately 1:00 a.m. on February 12, 2006, he was sitting in his patrol car and observing a public road in downtown Dover, that "get[s] a lot of bar . . . [and] pedestrian traffic" at that time because it's when "everybody [is] piling out of the bars." At about 1:15 a.m., the defendant's car "stuck out" because it was traveling at an "excessive" rate of speed for a "downtown" area. Meyer was so "alarm[ed]" that he pulled out and stopped the defendant.

Meyer asked the defendant for his license and registration. The defendant "seemed somewhat confused" as if he were "sort of perplexed

by the stop in itself." Meyer had to repeat himself several times before the defendant produced his license and registration. The moment that the defendant began speaking, Meyer smelled "the strong odor" of alcohol emanating from his breath. When he asked the defendant where he had been, Meyer "couldn't even understand what he was saying."

Meyer further testified that he told the defendant to step out of the car to perform three field sobriety tests, choosing a location that was well lit and clear of debris. He observed that the defendant had difficulty getting out of the car and was unsteady on his feet. To keep his balance, the defendant had to put his hand on the car. He held on to the car as he walked from the front to the back of the car. The defendant did not mention any physical limitations that would prevent him from performing the tests.

Meyer first administered the Horizontal Gaze Nystagmus (HGN) test. Both of the defendant's eyes involuntarily jerked while trying to follow the pen, the onset of nystagmus occurred prior to forty-five degrees, and each of the defendant's eyes bounced at the point where the pupil was as far over to the side as possible. Meyer then conducted the walk-and-turn test, first instructing the defendant how to perform it. During this phase the defendant could not keep his left foot in front of his right foot and he kept losing his balance. During the actual test, the defendant's feet "were never heel to toe, not in any one of the steps." Nor could he turn as directed or walk an imaginary straight line. Meyer next instructed the defendant how to perform the one-leg stand test. Again, the defendant had trouble staying balanced. During the test, the defendant was unable to raise his foot three inches and keep it up for the full thirty seconds.

Based upon the defendant's performance on all three tests and Meyer's interaction with and observations of the defendant, Meyer formed the opinion that the defendant was impaired and then arrested him. At the police station, the defendant continued to exhibit signs of intoxication: his breath smelled strongly of alcohol, he seemed "out of it," and Meyer had to repeat himself throughout the booking process. Additionally, he testified that the defendant refused to take a blood-alcohol concentration test. *See* RSA 265:88-a (repealed, amended and reenacted as RSA 265-A:10 (Supp. 2007) (effective January 1, 2007)).

Viewing this evidence and all reasonable inferences to be drawn from it in the light most favorable to the State, we conclude that a reasonable juror could have found beyond a reasonable doubt that the defendant was intoxicated. *See Wiggin*, 151 N.H. at 309-10 (testimony that defendant had difficulty with his contact lenses, ankle and knee problems and that snowy conditions affected his ability to perform field sobriety tests may have

tended to rebut State's evidence, but any conflicts in evidence were for fact finder to resolve).

The defendant argues that this case is similar to *State v. Lorton*, 149 N.H. 732, 733-34 (2003), in which we reversed the conviction of a defendant for driving under the influence of intoxicating liquor, holding that the evidence of his intoxication was insufficient to support his conviction. We disagree.

This case is distinguishable from *Lorton*. First, Meyer stopped the defendant because he was speeding in a crowded, downtown area just as the bars were closing. In *Lorton*, although the defendant had made a right-hand turn and failed to use a turn signal, he did not "operat[e] his vehicle erratically and . . . stopped in a safe and prudent manner." *Lorton*, 149 N.H. at 732-33.

In contrast to the defendant in *Lorton*, the defendant here demonstrated obvious, immediate signs of intoxication. Upon speaking to the defendant, Meyer instantly noticed "the strong odor of an alcoholic beverage emanating from [the defendant's] breath," while in *Lorton* the officer smelled only a "moderate" odor. *Id.* at 732 (quotation omitted). Here, the defendant appeared confused upon being asked for his license and registration, had a delayed response in producing both, and mumbled unintelligibly when asked where he had been. In contrast, the defendant in *Lorton* was able to produce both his license and registration without incident and effectively articulate his reason for driving. *Id.* at 732-33.

Additionally, the defendant here demonstrated significantly stronger signs of physical impairment than did the defendant in *Lorton*. The defendant had difficulty getting out of his car, was unsteady on his feet, and needed to lean on his car for balance. In *Lorton*, the defendant had no difficulty getting out of his car and "walked with a normal gait without stumbling or faltering in any way." *Id.* at 734.

The defendant in this case failed all three field sobriety tests, including the HGN test. In *Lorton*, the defendant performed only the walk-and-turn test and the one-leg stand test and "the results of the defendant's performance on the walk-and-turn test were essentially unremarkable." *Id.* at 733, 735. Additionally, in *Lorton*, both tests "were conducted under less than ideal conditions," *id.* at 735, while here the tests were conducted in a well-lit area, free of debris. Further, unlike the defendant in *Lorton*, the defendant here also exhibited continued signs of intoxication after his arrest, by being so "out of it" at the police station that Meyer had to repeat himself during the booking process.

■ For the above stated reasons, *Lorton* is easily distinguished and, therefore, not controlling. Our decision in *Lorton* was based upon its

precise set of facts, viewed in context. Given the evidence in this case, viewed in the light most favorable to the State, a rational juror could have found beyond a reasonable doubt that the defendant was impaired to some degree by intoxicating liquor and was thus driving while under the influence of alcohol.

We note that the State urges us to clarify or overrule *Lorton* "to the extent that *Lorton* can be said to hold that either a witness's direct observations of intoxicated behavior or a witness's opinion that a defendant is impaired based on such observations is circumstantial evidence of impairment." In light of our holding, we need not address this issue.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.