Rochester District Court
No. 2007-667

THE STATE OF NEW HAMPSHIRE v. GRAHAM JENSEN

Argued: October 22, 2008
Opinion Issued: November 21, 2008

110

*Kelly A. Ayotte,* attorney general (*Thomas E. Bocian,* attorney, on the memorandum of law, and *Susan P. McGinnis,* senior assistant attorney general, orally), for the State.

*Law Office of Joshua L. Gordon,* of Concord (*Joshua L. Gordon* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Graham Jensen, was convicted of theft of services, *see* RSA 637:8 (2007), following a bench trial in Rochester District Court (*Ashley,* J.). We affirm.

The record reveals the following. On March 23, 2006, at approximately 2:00 p.m., the defendant was driving northbound on the Spaulding Turnpike and attempted to pay the Rochester toll with two tokens. The Rochester toll was a fifty cent toll and at the time tokens were accepted, two tokens had the value of fifty cents. After the defendant handed the toll booth operator two tokens, he attempted to drive away. The attendant yelled for the defendant to stop, and the defendant complied. The attendant explained to the defendant that he could not pay with tokens. As of January 1, 2006, tokens were no longer an accepted form of payment for the use of toll roads; a sign posted on the outside of the booth door indicated this change. Even though it is uncontroverted that the defendant knew that tokens were no longer accepted, he insisted upon paying with tokens. The attendant asked him to drive into the parking lot to speak with the toll station supervisor and a police officer. The defendant complied, but refused to pay the toll. The police officer issued the defendant a court summons. After a bench trial, the trial court found him guilty of a class B misdemeanor.

On appeal, the defendant argues that he cannot be guilty of theft of services because he paid the toll with tokens. Specifically, he advances three arguments: (1) he had a contract with the State which obligated the State to accept the tokens as payment for use of the road; (2) he gave the tokens to the attendant with the intent to pay the toll, and, therefore, the State cannot prove the mental state necessary for theft; and (3) the tokens are gift certificates and cannot lawfully expire.

RSA 637:8, I, provides: "A person commits theft if he obtains services which he knows are available only for compensation by deception, threat, force, or any other means designed to avoid the due payment therefor." RSA 637:8, III further provides: "As used in this section, 'services' includes, but is not necessarily limited to, labor, professional service, public utility and transportation services . . . ." There is no dispute that the use of the Spaulding Turnpike is a service pursuant to RSA 637:8, I, which requires compensation. The defendant focuses his three arguments upon whether he intended to "avoid the due payment."

We first address the defendant's argument that he had a contract with the State. Prior to September 1, 2005, the State sold tokens at a discounted rate to be used for tolls. *See* RSA 237:11, V (1993) (amended 2005). In an attempt to implement a regional electronic toll collection system, *see* Laws 2005, 177:54, I, the legislature passed the following law: "The commissioner shall cease selling tokens on all of the turnpikes in the New Hampshire turnpike system on September 1, 2005 and shall cease collecting all tokens as of January 1, 2006." Laws 2005, 177:54, III. Hence, as of January 1, 2006, tokens were no longer an accepted form of payment for toll roads.

The defendant purchased tokens prior to September 1, 2005. At the time the State stopped accepting tokens, the defendant had not used all the tokens he had purchased. He argues that because he had a valid contract with the State, the State must continue to accept tokens or buy them back. At oral argument, the defendant argued his attempt to use the tokens was an act of civil disobedience.

 Assuming without deciding that the defendant had a valid contract with the State, it is against public policy to allow the defendant to use the contract as a shield to prevent criminal liability. "[W]here the contract was originally legal, but because of . . . a change in the law, performance of the acts prescribed in the contract by one of the parties has become illegal, any subsequent performance of such acts is against public policy . . . ." 8 S. WILLISTON, CONTRACTS § 19:35 (4th ed. 1998). Generally, where enforcing a contract results in violation of a criminal law, that contract is void. "Unless it is manifest that it was not the intention of the legislature to make the contract void, a contract in violation of a criminal statute is invalid, even

though the statute does not specifically so provide or by its terms prohibit the act or acts upon which the contract is based." 17A AM. JUR. 2D *Contracts* § 232 (2004). For example, in *Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854 (Pa. 2004), an insurance company was not required to defend the homeowner in a wrongful death action because the death was a result of the sale of heroin. *Greenfield*, 855 A.2d at 866. *Greenfield* held that, "in situations when an insured commits a criminal act, with respect to a . . . controlled substance, and unintended or unexpected injuries or losses occur as a result, whether by accident or negligence, public policy will not allow coverage under the contract of insurance." *Id.*; *see also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) ("illegal promises will not be enforced in cases controlled by the federal law"); *Town Plan. & Eng. Assoc., Inc. v. Amesbury Spec. Co., Inc.*, 342 N.E.2d 706 (Mass. 1976) (illegality is a defense to breach of contract). Thus, the defendant's argument that he had a contract is insufficient to prevent criminal liability provided he violated RSA 637:8, I. The defendant's remedy for any contract claim is a civil action and not violation of the Criminal Code.

█ Any argument the defendant has regarding his act being an act of civil disobedience is without merit, as he is not claiming that RSA 637:8, I, is unconstitutional. "Civil disobedience can be an act of great religious and moral courage and society may ultimately benefit. But if the law being violated is constitutional, the worthiness of one's motives cannot excuse the violation in the eyes of the law." *United States v. Platte*, 401 F.3d 1176, 1181 (10th Cir. 2005).

We next address whether the evidence was sufficient to prove the requisite mental state. The defendant argues that because he attempted to pay the toll with tokens, he did not act purposely. "To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. MacDonald*, 156 N.H. 803, 804 (2008).

█ RSA 637:8, I, states that a person is guilty of theft of services "if he obtains services which he knows are available only for compensation by. . . means designed to avoid the due payment therefor." RSA 637:8, I, does not specify a mental state. "When a criminal statute does not provide for a specific mental state, we read RSA 626:2, I, as requiring proof of a culpable mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question." *State v. Rollins-Ercolino*, 149 N.H. 336, 338 (2003); *see* RSA 626:2, I (2007) ("A person is guilty of murder, a felony, or a misdemeanor only if he acts

purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.").

Although we have not previously determined the mental state for theft of services, we will assume, as the defendant argues, that theft of services requires evidence sufficient to show the defendant acted purposely. *See State v. Sharon*, 136 N.H. 764, 765 (1993) (purposely is the highest degree of culpable mental state); RSA 626:2, II(a) (2007) ("A person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element.").

At trial, the defendant testified that he "paid the toll" in that he "gave the tokens." He further testified: "I firmly believe that this is a valid form of payment." The defendant, however, testified: "I have been aware that the tokens were going to be expiring." On cross-examination, he admitted that he knew that the tokens were no longer accepted.

█ The defendant testified, in effect, that his conscious object was to pay the toll with tokens which he knew were no longer accepted. The evidence showed that the defendant offered the tokens, knowing that they were not accepted, and therefore acted purposely to "avoid due payment." There was sufficient evidence that the defendant had the requisite mental state to be guilty of theft of services.

Finally, we address the defendant's argument that the tokens are gift certificates. The defendant points to RSA chapter 358-A (1995 & Supp. 2008), the Consumer Protection Act, in support of this argument. RSA 358-A:1, IV-a (Supp. 2008) defines "gift certificate" as "a written promise given in exchange for payment to provide the bearer, upon presentation, goods or services in a specified amount." RSA 358-A:2, XIII (Supp. 2008) further provides that it is unlawful to "[s]ell[] gift certificates having a face value of $100 or less to purchasers which contain expiration dates." The defendant argues the "written promise" is on the token packaging material, which contains the following language: "fare value, 25 cents. Not redeemable for cash. Use of tokens restricted to two-axle, two and four-tired vehicles." The defendant argues this language creates a gift certificate for less than $100.

█ In matters of statutory interpretation, we are the final arbiter of the legislative intent as expressed in the words of the statute considered as a whole. *State v. Polk*, 155 N.H. 585, 587 (2007). We first examine the language of the statute and ascribe the plain and ordinary meaning to the words used. *Id.* Assuming the tokens are written promises pursuant to RSA 358-A:1, IV-a, RSA 358-A:2, XIII states that it is unlawful to "[s]ell[] gift certificates . . . which contain expiration dates." The legislature passed a law

prohibiting the use of tokens. The defendant testified that he was unsure as to when he purchased the tokens and therefore there is no evidence that the defendant's tokens had an expiration date when he purchased them. Furthermore, if the legislature's decision to stop the use of tokens resulted in a Consumer Protection Act violation, the defendant's remedy is pursuant to the Consumer Protection Act, *see* RSA 358-A:10 (1995), and not to violate the criminal law.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.