NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2012-475


THE STATE OF NEW HAMPSHIRE

v.

HILLMAN BLESDELL-MOORE

Argued: January 9, 2014
Opinion Issued: April 15, 2014


Michael A. Delaney, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the memorandum of law and orally), for the State.

Brianna M. Sinon, assistant appellate defender, of Concord, on the brief, and Thomas A. Barnard, assistant appellate defender, of Concord, orally, for the defendant.

HICKS, J. The defendant, Hillman Blesdell-Moore, appeals his convictions for possession with intent to distribute marijuana and psilocybin (mushrooms), arguing that the Superior Court (Vaughn, J.) erroneously denied his motions to suppress evidence seized during a stop for a motor vehicle violation. We reverse and remand.

The trial court found or the record supports the following facts regarding a motor vehicle stop that occurred on the evening of November 23, 2011.

Officer Roy Holland of the Enfield Police Department stopped a truck for having defective tail lights. Holland testified that he activated his emergency blue lights and followed the truck before it stopped on the side of the road. Further, Holland testified that he did not observe any erratic behavior to suggest that the truck's driver — the defendant — was under the influence of illegal substances or alcohol.

Holland approached the defendant's truck and requested his driver's license and vehicle registration. He noticed that the defendant had bloodshot eyes and trembling hands and concluded that the defendant was nervous, but he also testified that the defendant was polite and cooperative during this brief interview. Holland allowed the defendant to step out of his truck to attempt to fix the tail lights while he conducted a license check in his cruiser. The officer testified that this license check was completed in approximately two to three minutes.

Holland then returned to the defendant's truck and asked to see his tongue. The defendant complied with the request, and Holland observed a green film coating the defendant's tongue. He believed this coating was consistent with marijuana use and asked the defendant when he had last smoked marijuana. The defendant initially denied smoking marijuana but subsequently admitted that he had smoked marijuana on the previous day. Holland asked if the defendant had marijuana paraphernalia in his truck. The defendant said that he did not. Concerned that the defendant was becoming agitated, Holland then obtained the defendant's consent to perform a pat-down search of his person. The officer felt two bulges in the defendant's back pockets, and the defendant produced two "wads" of cash.

After the pat-down, the defendant put the money back in his pockets, and Holland returned the defendant's license and registration with a verbal warning to repair the broken tail lights. This conversation was interrupted when the defendant received a telephone call from his father. Holland testified that he took the defendant's phone and detailed the circumstances of the stop to the defendant's father and said that the defendant "was going to drive home and park the vehicle until he could get it fixed." He then returned the telephone to the defendant and told him that he was free to go.

The two parted ways and walked toward their vehicles when Holland hesitated and asked the defendant whether he would answer another question. The defendant stopped getting into his truck and turned to Holland. Holland asked again whether the defendant had marijuana in his truck. The defendant denied that he did. He also denied Holland's subsequent request to conduct a search of his vehicle. The officer again stated that the defendant was free to leave, but then asked whether a drug canine would indicate that there were

drugs in the vehicle. At this point, the defendant looked at the ground and replied that he did not think so.

Holland stepped away from the defendant but remained within hearing distance as he contacted dispatch to request a canine unit. The defendant lamented that he was "screwed," and Holland asked the defendant how much marijuana he had in his truck. The defendant confessed that he had "a couple ounces" of marijuana and mushrooms in his truck.

Prior to his trial for possession with intent to distribute marijuana and psilocybin, the defendant filed four motions to suppress the following evidence: (1) Holland's examination of the defendant's tongue; (2) the initial questioning regarding marijuana use; (3) Holland's pat-down of the defendant; and (4) the subsequent interrogation regarding drug possession. The trial court granted the motion to suppress evidence of the green film on the defendant's tongue because the State failed to produce sufficient evidence that such was indicative of marijuana use, but denied the remaining motions. On appeal, the defendant contends that the trial court's failure to suppress all evidence obtained following the examination of the tongue violated his state and federal constitutional rights to be free from unreasonable searches and seizures. See N.H. CONST. pt. I, art. 19; U.S. CONST. amends IV, XIV.

We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). When reviewing a trial court's order on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review legal conclusions de novo. State v. Tarasuik, 160 N.H. 323, 327 (2010).

I. Expanding the Scope of a Stop

Part I, Article 19 of the New Hampshire Constitution protects "all people, their papers, their possessions and their homes from unreasonable searches and seizures." State v. Schulz, 164 N.H. 217, 221 (2012) (quotation omitted). Evidence obtained in violation of a defendant's rights under Part I, Article 19 of the State Constitution is inadmissible under the exclusionary rule, though an exception to this rule may apply if the State proves that the taint of the primary illegality is purged. State v. De La Cruz, 158 N.H. 564, 566 (2009).

A traffic stop is a "seizure." State v. McKinnon-Andrews, 151 N.H. 19, 22 (2004). The scope of such an investigative stop "must be carefully tailored to its underlying justification[,] must be temporary[,] and last no longer than is necessary to effectuate the purpose of the stop." State v. Wong, 138 N.H. 56, 63 (1993) (quotation and ellipsis omitted). The scope of a stop may be expanded to investigate other suspected illegal activity only "if the officer has a

reasonable and articulable suspicion that other criminal activity is afoot." State v. Hight, 146 N.H. 746, 748-49 (2001) (quotation omitted). An investigatory stop may "metamorphose into an overly prolonged or intrusive detention (and, thus, become unlawful)." State v. Michelson, 160 N.H. 270, 274 (2010) (quotation omitted). Whether the detention is a lawful investigatory stop, or goes beyond the limits of such a stop, depends upon the facts and circumstances of the particular case. Id.

To determine whether the scope of an otherwise valid stop has been exceeded by questioning, we must determine whether: (1) the question is reasonably related to the initial justification for the stop; (2) the law enforcement officer had a reasonable, articulable suspicion that would justify the question; and (3) in light of all the circumstances, the question impermissibly prolonged the detention or changed its fundamental nature. McKinnon-Andrews, 151 N.H. at 25. In adopting this standard, we explained:

> If the question is reasonably related to the purpose of the stop, no constitutional violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no constitutional violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.

Id. (quotation and brackets omitted).

The defendant does not dispute that he was lawfully stopped for a motor vehicle violation. See Michelson, 160 N.H. at 273. Instead, he argues that the scope of this initially valid traffic stop was unlawfully expanded when Holland asked to see the defendant's tongue and took additional steps to investigate whether the defendant had possessed or consumed marijuana. We agree.

The trial court granted the defendant's motion to suppress Holland's examination of the tongue for evidentiary reasons, rather than on constitutional grounds. We begin our analysis, however, with the question of whether the request to examine the defendant's tongue was constitutional. We first conclude that Holland's request to see the defendant's tongue was not reasonably related to the initial reason for the stop. According to Holland's testimony, the defendant was stopped because his truck's tail lights were defective. By the officer's own admission, the subsequent examination of the

4

defendant's tongue to investigate whether he had consumed marijuana was not related to this purpose.

Because Holland's request to examine the defendant's tongue was not reasonably related to the purpose of the stop, we must determine whether the officer's actions were justified by reasonable suspicion based upon "specific, articulable facts taken together with rational inferences from those facts – that the particular person stopped has been, is, or is about to be, engaged in criminal activity." McKinnon-Andrews, 151 N.H. at 25-26 (quotation omitted). To determine the sufficiency of an officer's suspicion, we evaluate the articulable facts in light of all surrounding circumstances, keeping in mind that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer. Id. at 26. We recognize that the perceptions of experienced officers are entitled to deference, but this deference should not be blind. See id. at 28 (Broderick, J., concurring). These articulable facts must lead to something specific and not simply "a general sense that this is probably a bad person who may have committed some kind of crime." State v. Joyce, 159 N.H. 440, 446 (2009) (quotation omitted).

Here, we conclude that Holland did not have reasonable suspicion that the defendant was engaged in criminal activity. Holland testified that he did not observe any indicia of impairment when he stopped the defendant's truck. Specifically, the defendant was not speeding, weaving through traffic, crossing lanes, or operating the truck in an erratic manner. He did not struggle to produce his license and registration, and the defendant walked without stumbling after Holland invited him to exit the truck. Holland also did not see anything in the truck that was suggestive of drug possession.

Despite the absence of signs of drug use and impairment, the State contends that the officer's actions were justified by the defendant's nervousness and bloodshot eyes. We are not persuaded. We have previously noted that nervousness is "entirely consistent with innocent behavior," id. at 447 (quotation omitted), and the officer in this case agreed that nervousness is "natural" during a traffic stop.

The trial court relied upon State v. Livingston, 153 N.H. 399 (2006), to support its ruling that Holland had reasonable suspicion to expand the scope of the stop. In Livingston, the officer approached the defendant's truck and smelled "a strong odor of burnt marijuana" emanating from the vehicle. Livingston, 153 N.H. at 405. The officer also observed the defendant's nervousness and bloodshot eyes. Id. A critical factor supporting reasonable suspicion in that case – the odor of burnt marijuana – is noticeably absent here. Despite Holland's training in detecting the odor of fresh and burnt marijuana, he did not detect any such odor in the car or on the defendant's

5

person and observed no behaviors beyond the defendant's nervousness, bloodshot eyes, and shaky hands.

Absent additional facts, we decline to find that otherwise innocent factors like nervousness and bloodshot eyes are sufficient to support reasonable suspicion. "[W]e think it impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." United States v. Smith, 263 F.3d 571, 594 (6th Cir. 2001) (quotation omitted); see also Ferris v. State, 735 A.2d 491, 508, 510 (Md. 1999) ("The innocent and the guilty may both frequently react with analogous trepidation when approached by a uniformed police officer. . . . In the absence of any testimony or scientific evidence as to some direct, observable correlation between eyes that are bloodshot, even extremely so, and drug usage or, intuitively less likely, drug possession, we find this fact to carry little, if any, weight."). This conclusion is consistent with our prior cases. Compare Joyce, 159 N.H. at 447 (investigative stop not justified by reasonable suspicion, despite nervousness and deceptive responses of defendant and his companion, when they denied using marijuana and nothing in car suggested drug consumption), with State v. Wallace, 146 N.H. 146, 149-50 (2001) (stop justified by reasonable suspicion when the defendant was found near the scene of a recent robbery, dressed in hooded dark clothing, and cast furtive glances before he made a 360 degree turn and continued to approach the police cruiser), and State v. Roach, 141 N.H. 64, 66 (1996) (reasonable suspicion justified investigative stop and further questioning when defendant acted furtively in Manchester's "combat zone" at 3:55 a.m. and evaded police officer when he approached).

Finally, we address whether the officer's actions "impermissibly prolonged the detention or changed the fundamental nature of the stop." McKinnon-Andrews, 151 N.H. at 25 (quotation omitted). Although the brief inspection of the defendant's tongue did not prolong the stop, we conclude that the search altered the fundamental nature of the stop by transforming a routine traffic stop into an investigation of potential drug activity. Id. By asking to see the defendant's tongue, the officer set out to determine whether the defendant had, in fact, consumed or was in possession of marijuana. Although a reasonable motorist may not understand that a green film on the tongue may be indicative of marijuana consumption, he would certainly recognize that the officer's request to see his tongue changed the fundamental nature of an otherwise routine traffic stop. See id. at 29 (Broderick, J., concurring) ("To my mind, a reasonable motorist would have perceived the question as altering the fundamental nature of the stop."). This was an impermissible and unconstitutional expansion of the scope of the stop.

6

## II. The Fruit of the Poisonous Tree

Our conclusion that the officer's request to see the defendant's tongue unlawfully expanded the scope of the stop does not lead inexorably to the conclusion that all other evidence obtained after that request is excludable. Id. at 29. We must determine whether, in view of the primary illegality, the evidence that the defendant sought to suppress was obtained by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Hight, 146 N.H. at 749.

The State argues that the fruit of the poisonous tree doctrine does not apply in this case because the argument was not made before the trial court. We disagree. The four suppression motions and defense counsel's oral argument to the trial court establish that this issue was adequately preserved for our review. "The 'fruit of the poisonous tree' doctrine requires the exclusion from trial of evidence derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution. If the evidence in question has been obtained only through the exploitation of an antecedent illegality, it must be suppressed." State v. McGurk, 157 N.H. 765, 771 (2008) (quotation omitted). The purpose of this exclusionary rule is to: "(1) deter police misconduct; (2) redress the injury to the privacy of the victim of the unlawful police conduct; and (3) safeguard compliance with State constitutional protections." State v. Panarello, 157 N.H. 204, 207 (2008).

Read together, the defendant's four suppression motions are all based upon the officer's initial request to examine the defendant's tongue. This examination sparked the officer's suspicion that the defendant consumed marijuana and resulted in an interrogation about the defendant's marijuana use. The defendant's responses to the interrogation prompted the officer to pat down the defendant, and conduct further interrogation which resulted in the defendant's admission to marijuana and psilocybin possession.

In determining whether the taint of a Part I, Article 19 violation has been purged, we consider the following factors: "(1) the temporal proximity between the police illegality and the acquisition of the evidence sought to be suppressed; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." McGurk, 157 N.H. at 771 (quotation and ellipsis omitted). Regarding the first factor, the officer's illegal request to see the defendant's tongue and his subsequent observation of the film coating the tongue was closely followed by his interrogation of the defendant. Hight, 146 N.H. at 750. Second, there were no intervening circumstances to purge the taint of the unlawful inspection of the defendant's tongue. Id.

Finally, we assess the purpose and flagrancy of the official misconduct in this case. Id. at 751. Holland admitted that his request to examine the

defendant's tongue was unrelated to the initial purpose of the stop, and it was the first of several efforts to find marijuana during an otherwise routine traffic stop for defective tail lights. Viewed objectively, Holland was determined to conduct a drug investigation unsupported by reasonable suspicion. This is especially troubling in light of the defendant's youth and Holland's statement to the defendant's father that he would be releasing the defendant to return home. All of the circumstances "give[] rise to the <u>appearance</u>, even if not the reality, that the officer's purpose was to engage in a 'fishing expedition' for incriminating evidence by exploiting the defendant's ignorance of his constitutional rights." <u>Id</u>.

Because the officer's request to examine the defendant's tongue was an impermissible expansion of the stop, the exclusionary rule bars admission of the result of the officer's examination of the defendant's tongue. Moreover, the fruits of that search are also inadmissible because the State failed to establish that the taint of the unlawful expansion of the stop was purged. We conclude, therefore, that the trial court erroneously denied suppression of all evidence obtained following the unlawful expansion of the stop.

Because the evidence was obtained illegally under the New Hampshire Constitution, we need not reach the federal issue. <u>Ball</u>, 124 N.H. at 237.

<u>Reversed and remanded</u>.

DALIANIS, C.J., and CONBOY and BASSETT, JJ., concurred; LYNN, J., concurred specially.

LYNN, J., concurring specially. I agree with the majority that the incriminating statements made by the defendant after Officer Holland asked whether a canine would detect drugs in his vehicle, as well as the drugs themselves, must be suppressed. I write separately because I reach this result upon different grounds than the majority.

The majority holds that Holland's request to view the defendant's tongue fails the third prong of the three-part sequential test we articulated in <u>State v. McKinnon-Andrews</u>, 151 N.H. 19, 25 (2004), for determining whether a police officer's questioning exceeds the scope of a lawful traffic stop. In doing so, the majority concludes that this single inquiry, which I agree was neither reasonably related to the initial justification for the stop nor based upon any reasonable suspicion that arose before the question was asked, fails the third prong of the test because it "changed the fundamental nature of the stop." <u>Ante</u> at 6.

I do not agree that <u>McKinnon-Andrews</u> so narrowly circumscribes the scope of questioning during a traffic stop that <u>any</u> inquiry aimed at detecting non-germane criminal activity changes the fundamental nature of the stop. If that is true, then the third prong of the test has little practical meaning because virtually all inquiries that fail the second prong of the test will automatically fail the third prong as well. For example, if in response to Holland's single "tongue" inquiry, the defendant had immediately admitted without further questioning that he had been smoking marijuana and had a supply of the drug in the car, would we really suppress that evidence? I think not. Thus, I do not find that Holland's request to view the defendant's tongue, without more, fundamentally changed the nature of the stop.

Rather, in my view, the proper grounds for suppression are two-fold. First, as the trial court found (a finding that the State did not cross-appeal), the State failed to show that the green tongue displayed by the defendant in response to Holland's request had any probative significance with respect to the defendant's use or possession of drugs. Second, notwithstanding the fact that the green tongue gave Holland no basis to make further drug-related inquiry, he continued to make multiple inquiries until the defendant finally admitted to possessing drugs. These repeated inquiries had the effect of impermissibly prolonging the stop, and, therefore, require that the fruits of this illegality be suppressed.