# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0378, <u>State of New Hampshire v. Susan Galvin</u>, the court on February 18, 2016, issued the following order:**

Having considered the brief, the memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Susan Galvin, appeals her conviction, following a bench trial in the Circuit Court (<u>Gardner</u>, J.), on the charge of driving under the influence of alcohol (DUI). <u>See</u> RSA 265-A:2 (2014). She contends that: (1) the trial court erred by denying her motion to suppress; and (2) the evidence was insufficient to support the trial court's finding that she was impaired.

The defendant first argues that the trial court should have suppressed all evidence obtained after she exited her vehicle, on the ground that the trooper "impermissibly expanded the scope of the stop" in violation of the State and Federal Constitutions. We first address her claim under the State Constitution and rely upon federal law only to aid in our analysis. <u>State v. Ball</u>, 124 N.H. 226, 231-33 (1983). In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous. <u>State v. McKinnon-Andrews</u>, 151 N.H. 19, 22 (2004). Our review of the trial court's legal conclusions, however, is <u>de</u> <u>novo</u>. <u>Id</u>.

A traffic stop is a seizure for the purposes of the State Constitution. <u>State v. Blesdell-Moore</u>, 166 N.H. 183, 187 (2014). The scope of the stop must be carefully tailored to its underlying justification. <u>Id</u>. The stop may be expanded to allow an officer to investigate other suspected illegal activity only if the officer has a reasonable and articulable suspicion that other criminal activity is afoot. <u>Id</u>.

To determine the sufficiency of an officer's suspicion, we evaluate the articulable facts in light of all surrounding circumstances, keeping in mind that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer. <u>Id</u>. at 188. We recognize that experienced officers' perceptions are entitled to deference, but this deference should not be blind. <u>Id</u>. These articulable facts must lead to something specific and not simply a general sense that this is probably a bad person who may have committed some kind of crime. <u>Id</u>. at 188-89.

We agree with the trial court that "the trooper had more than ample reason to expand the scope of the stop that was initially done for the speed." The defendant does not challenge the trooper's authority to initiate the stop based upon her driving 92 miles per hour. The trooper testified that, upon approaching the defendant's vehicle: (1) he observed an "obvious odor of alcohol"; (2) the defendant, who was the sole occupant of the vehicle, "said she doesn't drink at all"; (3) she appeared confused; (4) her eyes were glassy and red; (5) an unopened bottle of beer was on the floor of the passenger's seat; and (6) the defendant had difficulty finding her identification. The trooper testified that, although speeding is not an indicator of impairment, the defendant's "extremely excessive speed" in "moderately heavy" traffic contributed to his suspicion that she might be impaired. The trooper further testified that, based upon his training and experience, these observations indicated that further investigation was necessary.

The defendant argues that: (1) "'the odor of alcohol' is often simply an indication of consumption, not intoxication"; (2) the defendant did not exhibit "difficulty handing the license over once [she] was able to find it"; (3) she did not slur when she spoke or have difficulty answering questions; and (4) she accounted for her red eyes by explaining that she was tired. However, we conclude that these facts do not defeat the trained trooper's reasonable and articulable suspicion that the defendant was intoxicated. Because the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, see McKinnon, 151 N.H. at 27; Terry v. Ohio, 392 U.S. 1, 16–30 (1968), we reach the same result under the Federal Constitution as we do under the State Constitution.

We next address the sufficiency of the evidence. To prevail upon a challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence in context and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. MacDonald, 156 N.H. 803, 804 (2008). RSA 265-A:2, I, provides, in pertinent part that: "No person shall drive . . . a vehicle upon any way . . . [w]hile such person is under the influence of intoxicating liquor." To prove that the defendant was "under the influence of intoxicating liquor," the State need only prove that the defendant was impaired to any degree. MacDonald, 156 N.H. at 804.

The trooper testified that: (1) after having stated that she did not drink "at all," the defendant admitted that she had been drinking alcohol that evening and that she was probably over the legal limit; (2) she also stated she was taking a depressant medication; (3) she was unable to follow directions; (4) she exhibited six out of six clues of impairment on the horizontal gaze nystagmus test, which could have been affected by her medication; (5) she was unable to complete the walk-and-turn test, but exhibited three out of eight clues on the portion she did perform; (6) she attempted the one-foot stand

2

three times, without completing it successfully, and exhibited three out of four clues; (7) he observed her swaying; and (8) she refused to take a breath test at the police station. See RSA 265-A:10 (2014) (evidence of refusal to take alcohol concentration test admissible in DUI trial on the issue of impairment).

The defendant argues that "[t]he State presented less evidence of impairment due to alcohol in this case than in" State v. Lorton, 149 N.H. 732 (2003), overruled in part by State v. Kelley, 159 N.H. 449, 454 (2009). However, Lorton has been limited to "its precise set of facts, viewed in context." MacDonald, 156 N.H. at 806-07. In this case, although the defendant argues that there was no testimony that she "failed" the field sobriety tests, the many clues in her performance cannot be considered "essentially unremarkable," Lorton, 149 N.H. at 735.

The defendant argues that any inference from her refusal to take the breath test is mitigated because she agreed to take a preliminary breath test (PBT). However, the trooper testified that she did not agree to take the PBT until after she was arrested, at which point he was concerned about whether he could administer the test. See RSA 265-A:15, I (2014) (stating PBT may be administered without making an arrest). Furthermore, she did not agree to take the breath test at the police station. Although the defendant argues that the trooper deemed her to have refused the test after she remained indecisive for only five minutes, in fact she had 90 minutes after being offered the PBT in which to consider whether to consent to the breath test at the station. She contends that the trooper's statement that the results of the breath test would determine whether she was charged with DUI "mitigates the value of any observations concluding [her] ability to drive was impaired." On the contrary, the trooper's statement shows that the defendant had reason to understand the consequences of refusing to take a breath test.

The defendant next argues that the trooper "acknowledged his evidence was weak indicating . . . he did not have much to go on." However, the trooper clarified that he said he did not have much to go on to justify releasing her.

Viewing all of the evidence, and all reasonable inferences from it, in the light most favorable to the State, we conclude that the trial court reasonably could have found that the defendant was impaired beyond a reasonable doubt. Accordingly, we find no error, plain or otherwise.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**