Hicks, J.,
concurring specially. The majority applies the three-part test we articulated in State v. McKinnon-Andrews, 151 N.H. 19, 25 (2004), for determining whether a police officer’s questioning exceeds the scope of a lawful traffic stop. Applying this test, the majority holds that McAulay impermissibly expanded the scope of the traffic stop by requesting a canine unit to perform a sniff of the vehicle. While I agree with the majority that the evidence obtained as a result of the subsequent consent search must be suppressed, I write separately because I would apply the third prong of the McKinnon-Andrews test differently than the majority.
Consistent with the majority opinion, I believe that the first two prongs of the McKinnon-Andrews test were not satisfied in the instant case. McAulay’s request for a canine unit was not reasonably related to the initial justification for the stop. Cf. id. at 25 (holding officer’s question regarding contents of defendant’s vehicle not reasonably related to purpose of traffic stop). Additionally, it was not based upon any reasonable suspicion that arose before McAulay made the request. See State v. Blesdell-Moore, 166 N.H. 183, 185, 189 (2014) (defendant’s nervousness, trembling hands, and bloodshot eyes did not justify questioning about drug use); Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992) (en banc) (although officer considered defendant’s behavior to be “unusual,” officer lacked reasonable suspicion when there was no indication that the unusual activity was related to crime).
The third prong of the test requires consideration of whether “in light of all the circumstances, the question impermissibly prolonged the detention or changed its fundamental nature.” McKinnon-Andrews, 151 N.H. at 25. This prong is dual-faceted; one facet relates to the length of the detention, and the other relates to the nature of the stop. The majority relies on the facet relating to the length of the detention, concluding that McAulay “prolonged the stop without a proper basis for doing so.” With much respect for the majority, I would rely upon the facet of the third prong relating to the nature of the stop given the facts of this case. I believe that a sounder rationale for concluding that the third prong of the test was not satisfied is that the request for a canine unit “changed the fundamental nature of the stop.” Id.
*722 In my view, the traffic stop was transformed into an investigation of criminal activity relating to the possession of contraband, at the latest, when McAulay requested a canine unit. By making this request, he plainly sought to determine whether Millett and the defendant possessed illegal drugs or some other form of contraband. A reasonable motorist in Millett’s position would understand that this request altered the fundamental nature of the stop. See Blesdell-Moore, 166 N.H. at 190 (considering perception of reasonable motorist); McKinnon-Andrews, 151 N.H. at 28-29 (Broderick, J., concurring specially) (concluding that officer’s question regarding contents of vehicle altered fundamental nature of traffic stop based, in part, upon reasonable motorist’s perception). An investigation into the possession of contraband is fundamentally different from an investigation of traffic violations, such as the misuse of plates and improper child restraints at issue here — or even an investigation of potential kidnapping, which the State claims was justified by reasonable suspicion. Further, as the majority notes, McAulay “had already satisfactorily resolved the license plate issue that provided the initial justification for the stop.”
For these reasons, I believe that the stop metamorphosed into an overly intrusive detention, at the latest, by the time McAulay requested the canine unit. See Blesdell-Moore, 166 N.H. at 187. Thus, I would hold that McAulay’s request for a canine unit “changed the fundamental nature of the stop.” McKinnon-Andrews, 151 N.H. at 25.