NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2016-0698

THE STATE OF NEW HAMPSHIRE

v.

MEGHAN SAGE

Argued: October 12, 2017
Opinion Issued: February 9, 2018

Gordon J. MacDonald, attorney general (Scott Chase, attorney, on the brief and orally), for the State.

Liberty Legal Services, of Manchester (Dan Hynes on the brief and orally), for the defendant.

LYNN, J. The defendant, Meghan Sage, appeals her conviction for driving under the influence (DUI), second offense, see RSA 265-A:2, I (2014); RSA 265-A:18, IV (2014), following a de novo jury trial in the Superior Court (Wageling, J.), see RSA 599:1 (Supp. 2016). On appeal, she argues that the trial court erred by: (1) denying her motion to suppress evidence derived from expansion of the underlying traffic stop; (2) declining to exclude breathalyzer test results, or alternatively dismiss her charge, for an alleged violation of her due process rights under Part I, Article 19 of the New Hampshire Constitution; and (3) enhancing her sentence under RSA 265-A:18, IV based upon a 2008

conviction from Maine for operating under the influence (OUI), see Me. Rev. Stat. Ann. tit. 29-A, § 2411 (Supp. 2007).  We affirm.

I

The following facts are taken from the trial court's orders in this case.  At approximately 5:00 a.m. on April 19, 2014, Trooper Ronchi of the New Hampshire State Police observed a vehicle traveling at 88 miles per hour in a 65 mile-per-hour zone on Interstate 95.  See RSA 265:60, II (2014).  After giving pursuit, Ronchi caught up to the vehicle and observed that it had not slowed, but was now traveling at 91 miles per hour.  Ronchi activated his emergency lights and the vehicle promptly pulled over.

Ronchi approached the vehicle and made contact with its operator and sole occupant, a female later identified as the defendant.  While he spoke to the defendant, Ronchi detected the odor of alcohol emanating from her vehicle and observed that she had red, watery eyes.  Ronchi requested the defendant's license and registration, which she produced without difficulty, and then inquired into her travels.  Initially, the defendant explained that she was on her way from work to her boyfriend's house in Connecticut.  As the two continued to converse, however, the defendant altered her story, contending that she was on her way from home, not work.

Concerned that she might be impaired based upon the foregoing observations, Ronchi asked the defendant how much alcohol she had consumed prior to operating her vehicle.  The defendant replied "none."  His concern remaining, Ronchi asked the defendant if she would be willing to perform field sobriety tests.  The defendant agreed to do so and subsequently failed each test — horizontal gaze nystagmus, walk-and-turn, one-leg stand — Ronchi administered.  Ronchi thereafter placed the defendant under arrest for DUI and transported her to the Hampton police station for processing.

After arrival at the station and review of her rights under the Administrative License Suspension form, the defendant consented to a breath test.  Testing of her breath samples revealed a blood alcohol level of 0.12.  Upon hearing the results, the defendant requested a blood test at least three separate times.  Ronchi denied the requests, explaining to the defendant each time that his investigation was complete and he had no need to conduct further testing.  Ronchi in turn provided the defendant with capture tubes containing her breath samples.  See RSA 265-A:7 (2014) (amended 2016).

A bail commissioner subsequently arrived and released the defendant on $2,500 personal recognizance bail.  The defendant was then offered several opportunities to use a telephone.  When she was unsuccessful in arranging for someone to pick her up at the station, Ronchi placed the defendant in protective custody due to her intoxication level and transported her to the

2

Rockingham County House of Corrections. After being held in protective custody for 8 hours, during which she made additional telephone calls to family members to no avail, the defendant was released from the house of corrections. She did not seek to have an independent blood test performed at any point thereafter.

Following a bench trial, the circuit court found the defendant guilty of DUI. See RSA 265-A:2, I. The defendant then appealed to the superior court for a de novo jury trial. See RSA 599:1. Prior to trial, the defendant moved to suppress evidence obtained during the traffic stop, arguing that Ronchi unlawfully expanded the scope of the stop when he asked her to perform field sobriety tests. The defendant further moved to exclude the results of her breath test, or to dismiss the charge, arguing that Ronchi violated her due process rights by denying her the opportunity to obtain an independent blood test. See RSA 265-A:7 (2014) (amended 2016). The defendant also challenged the State's intent to use her prior OUI conviction from Maine for sentence enhancement purposes, see RSA 265-A:2, I,:18, IV, asserting that Maine's OUI offense was not "reasonably equivalent" to New Hampshire's DUI offense under the elements-based approach to the determination established by this court in State v. Hull, 149 N.H. 706, 710 (2003).

Following an evidentiary hearing, the trial court denied the defendant's suppression motion in its entirety. With regard to the stop, the trial court found that Ronchi's expansion of the stop was justified by a reasonable, articulable suspicion that the defendant was driving under the influence. As to testing, the trial court found that the police afforded the defendant the opportunity to obtain an independent test by providing her access to a telephone, after which she made an inadequate effort to arrange for one. Accordingly, the trial court concluded that the defendant had failed to demonstrate a violation of her due process rights.

The trial court also rejected the defendant's challenge to the use of her Maine OUI conviction. Although acknowledging that the elements of the two offenses differ, the trial court determined that, pursuant to Hull, it could also consider the facts underlying the defendant's Maine conviction in determining whether it was reasonably equivalent to a conviction for New Hampshire's DUI offense. After review of the factual allegations in the underlying police records, the trial court found that the defendant's conduct leading to her conviction for Maine's OUI offense would have also sustained a conviction for New Hampshire's DUI offense. Thus, the trial court concluded that the Maine OUI conviction was a "reasonably equivalent offense" for sentence enhancement purposes under RSA 265-A:18, IV. A jury later found the defendant guilty of DUI and the trial court sentenced her as a subsequent offender in accordance with its finding. This appeal followed.

The defendant first contends that, after stopping her for speeding, Ronchi unlawfully expanded the scope of the traffic stop when he asked her to step out of the vehicle to perform field sobriety tests. Accordingly, the defendant argues that the trial court erred in denying her motion to suppress all evidence derived from this violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and Part I, Article 19 of the New Hampshire Constitution. Because the defendant has failed to demonstrate on appeal that she preserved her federal constitutional argument, see State v. DeCato, 156 N.H. 570, 573 (2007), we limit our review to her state constitutional argument and rely upon federal law merely to aid our analysis, see State v. Dewitt, 143 N.H. 24, 33 (1998); State v. Ball, 124 N.H. 226, 233 (1983). "When reviewing a trial court's order on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review legal conclusions de novo." State v. Blesdell-Moore, 166 N.H. 183, 187 (2014).

A traffic stop is a seizure for purposes of the State Constitution. Id. "The scope of such an investigative stop must be carefully tailored to its underlying justification, must be temporary, and last no longer than is necessary to effectuate the purpose of the stop." Id. (quotation and brackets omitted). "The scope of a stop may be expanded to investigate other suspected illegal activity only if the officer has a reasonable and articulable suspicion that other criminal activity is afoot." Id. (quotation omitted). "To determine the sufficiency of an officer's suspicion, we evaluate the articulable facts in light of all surrounding circumstances, keeping in mind that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer." Id. at 188. Although we recognize that experienced officers' perceptions are entitled to deference, this deference should not be blind. Id. The "articulable facts must lead to something specific and not simply a general sense that this is probably a bad person who may have committed some kind of crime." Id. at 188-89 (quotation omitted).

In this case, we agree with the trial court that, based upon the following observations, Ronchi possessed a reasonable and articulable suspicion sufficient to justify expanding the scope of the stop to investigate whether the defendant was driving under the influence: (1) the defendant's inability to maintain a correct speed; (2) the odor of alcohol emanating from her vehicle; (3) her red and watery eyes; and (4) her inconsistent explanations regarding her travels. Consequently, Ronchi was permitted to ask the defendant a moderate number of questions to confirm or dispel this suspicion, see State v. Bell, 164 N.H. 452, 455 (2012), and to administer field sobriety tests, see State v. Steeves, 158 N.H. 672, 677 (2009).

In arguing that the foregoing observations are insufficient to establish a reasonable suspicion, the defendant begins by asserting that most are readily attributable to a cause other than impairment — e.g., red and watery eyes may be attributable to fatigue. As we have previously recognized, however, "[t]hat observed activity could be consistent with both guilty and innocent behavior does not mean that an officer must rule out innocent explanations before proceeding." State v. Galgay, 145 N.H. 100, 103 (2000); accord State v. Turmel, 150 N.H. 377, 381 (2003). Moreover, we do not consider each of Ronchi's observations in isolation; rather, we consider them together and in light of the reasonable inferences that an officer who is experienced in detecting and investigating impaired drivers may draw. State v. Wallace, 146 N.H. 146, 149-50 (2001). Thus, while the defendant's inconsistent statements, vehicle speed, and red and watery eyes may seem innocuous in isolation, these observations must be considered together with the odor of alcohol emanating from her vehicle. See United States v. Sokolow, 490 U.S. 1, 9 (1989) ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion.").

The defendant nevertheless contends that, even considering Ronchi's observations collectively, he did not observe other hallmark indicators of impairment, such as vehicle control issues or slurred speech. Thus, the defendant argues, it was not reasonable for Ronchi to "conclude" that she was impaired. Ronchi, however, did not need to "conclude" that the defendant was impaired in order to expand the scope of the stop. Rather, he needed to possess a reasonable and articulable suspicion that she was. See State v. Sousa, 151 N.H. 297, 299 (2004) (recognizing that reasonable suspicion is a "less demanding standard than probable cause"); see also Sokolow, 490 U.S. at 7 (recognizing that the level of suspicion necessary for an investigative detention "is considerably less than proof of wrongdoing by a preponderance of the evidence"). Although other indicators of impairment would have arguably strengthened Ronchi's reasonable and articulable suspicion, we do not believe that their absence acted to defeat it in this case.

Accordingly, because Ronchi's expansion of the stop was justified by a reasonable, articulable suspicion that the defendant was driving under the influence, we conclude that the trial court did not err in denying the defendant's motion to suppress the evidence derived therefrom.

III

We next address the defendant's argument that Ronchi violated her statutory rights as well as her due process rights under Part I, Article 15 of the New Hampshire Constitution by failing to accommodate her request for an independent blood test. The defendant contends that, in light of these violations, the trial court erred by not dismissing the charge, or, at the

5

minimum, excluding her breath test results.  We find no error in the trial court's ruling.

As a preliminary matter, we reject the defendant's position that it would be proper to evaluate her statutory claim by construing the implied consent statute in effect at the time of her arrest in 2014 with the 2016 amendments thereto.  See, e.g., RSA 265-A:7 (Supp. 2016) (eff. Jan. 1, 2017) (requiring that when law enforcement ask a person to submit to a breath test they provide "contact information for individuals and the nearest facilities that make themselves available to draw and test blood").  Although we have recognized "where a former statute is clarified by amendment, the amendment is strong evidence of the legislative intent concerning the original enactment," Bovaird v. N.H. Dep't of Admin. Servs., 166 N.H. 755, 763 (2014) (quotation omitted), such is not the case here.  The 2016 amendments to the implied consent statute do not clarify the former version; they change it.  Presumably out of consideration of the foregoing, the legislature did not give the amendments retroactive effect, but rather set January 1, 2017 as their effective date.  See State v. Carpentino, 166 N.H. 9, 15 (2014) ("We find it difficult to infer legislative intent that an amendment should apply retrospectively when the legislature set an effective date for that amendment nearly six months into the future."); see also 2 N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 41:4, at 417-18 (7th ed. 2009) ("The presumption against applying a newly enacted statute retrospectively exists as a matter of fairness, so that people have opportunities to know what the law is and to conform their conduct accordingly.").  Accordingly, we limit our analysis of the defendant's statutory claim to the version of the implied consent statute in effect at the time of her arrest.

That version requires an officer, before administering any blood-alcohol test, to inform an arrested person of "his or her right to have an additional test or tests of his or her blood made by a person of his or her own choosing."  RSA 265-A:8, I(a) (2014) (amended 2016); see RSA 265-A:4 (2014) (amended 2017).  It further requires that the arrested person be afforded "an opportunity to request such additional test."  RSA 265-A:8, I(b) (2014).  "The right to an additional test is not absolute, however, as 'the failure or inability of an arrested person to obtain an additional test' will not 'preclude the admission of any test taken at the direction of a law enforcement officer.'"  State v. Winslow, 140 N.H. 319, 321 (1995) (brackets omitted) (quoting RSA 265:86 (repealed 2006), part of the implied consent law then in effect).

"Though [DUI] defendants enjoy only a limited statutory right to an independent test, under the State Constitution some process is due individuals who seek to exercise this right."  Id.  Indeed, "without the opportunity to request the additional test, the instruction about the right to have one would be valueless."  State v. Dunsmore, 112 N.H. 382, 385 (1972) (Grimes, J., dissenting) (discussing the implied consent law then in effect).  Accordingly,

6

"due process requires that a [DUI] defendant be afforded a meaningful opportunity to request an additional blood-alcohol test." Winslow, 140 N.H. at 322. "Whether the State has so frustrated the defendant's efforts as to deny him a meaningful opportunity will depend upon the circumstances of the case." Id.

We find, as did the trial court, our decision in Winslow to be instructive in the present case. In Winslow, a defendant arrested for driving while intoxicated, who had consented to a breath test while also requesting an independent blood test, was told he would be given the opportunity for the latter following completion of the former. Id. at 320. The defendant renewed his request for a blood test following his breath test and, after booking him, the police provided him with access to a telephone. Id. After he was unsuccessful in contacting someone to assist him in making bail and arranging transportation for a blood test, the defendant complained that the telephone permitted only collect calls. Id. He did not, however, request the police to contact a physician on his behalf or inquire if transportation could be arranged, and he was transported to a county jail. Id. at 320-21.

The defendant appealed the trial court's denial of his motion to suppress the results of the breath test, arguing that the police violated his due process rights by interfering with his efforts to obtain an independent blood test. Id. at 321. In concluding that the trial court did not err, we observed that the defendant was informed of his statutory right to an independent test and provided with a meaningful opportunity to obtain one when the police provided him with a telephone. Id. at 322. Although noting that "access to a telephone may not satisfy the requirements of due process in all circumstances," we further observed that the defendant did not explicitly ask for assistance after his unsuccessful calls and, therefore, he had failed to demonstrate that due process required further accommodation. Id.

Likewise, in this case, the record shows that the defendant was informed of her statutory right to an independent blood test and, after the defendant requested such a test, the police afforded her a meaningful opportunity to obtain one by providing several opportunities to use a telephone, both at the police station and at the house of corrections. In turn, also as in Winslow, there is no indication in the record that the defendant sought any further accommodation from the police following her unsuccessful calls, such as requesting assistance with arranging testing. Finally, we end by noting, as we did in Winslow, that the police provided the defendant with her breath test sample capture tubes. See RSA 265-A:7.

Accordingly, we conclude that the trial court did not err in finding no violation of the defendant's statutory or due process rights. In light of the foregoing, we need not address the defendant's arguments regarding the proper

7

remedy for a due process violation under the facts and circumstances of this case.

IV

We lastly address whether the trial court erred in sentencing the defendant as a subsequent offender pursuant to RSA 265-A:18, IV based upon her 2008 OUI conviction from Maine.

In relevant part, RSA 265-A:18 provides that a person convicted of DUI shall be subject to enhanced penalties if, as alleged in the complaint, he or she "has had one or more prior convictions under RSA 265-A:2, I or RSA 265-A:3, or RSA 630:3, II, or under reasonably equivalent offenses in an out-of-state jurisdiction." RSA 265-A:18, IV (emphasis added). In Hull, we were called upon to determine whether, for sentence enhancement purposes, a defendant's prior conviction for Massachusetts's OUI offense was "reasonably equivalent" to a conviction for New Hampshire's DUI offense. Hull, 149 N.H. at 708-11 (analyzing RSA 265:82-b (repealed 2006), part of the DUI statute then in effect). Recognizing that neither we nor the legislature had to that point defined what a "reasonably equivalent offense" was, id. at 709 (quotation omitted), we looked to other jurisdictions for guidance and observed the following:

> While the tests applied in other jurisdictions differ, one common factor is whether the evidence required to sustain a conviction for the out-of-state jurisdiction's offense would necessarily sustain a conviction under the home state's statute. If the answer to this question is "yes," the offense is an "equivalent offense" for sentencing enhancement purposes. If the answer to this question is "no," the offenses are not "equivalent." The language of the elements of the statutes need not be identical, because the purpose of subsequent offender laws is to prohibit and punish a specific type of recurring conduct by imposing an enhanced sentence. The prior offense is not an additional element of the present charge.

Id. at 710 (citations omitted). Finding it persuasive and consistent with a test then used by the department of safety in a different context, we applied this elements-based approach to the New Hampshire and Massachusetts offenses to determine whether they were reasonably equivalent. Id.

The Massachusetts and New Hampshire offenses contained the same three elements, two of which were identical in language, with the only difference between the third being the phrases "operates a motor vehicle" under Massachusetts's offense and "drive a vehicle" under New Hampshire's offense. Id. at 710-11 (quotation omitted). As we had never previously drawn a distinction between the terms "operate" and "drive" under our DUI offense, we

8

ultimately concluded that the two offenses were "reasonably equivalent" because the evidence required to sustain a conviction for OUI in Massachusetts would necessarily sustain a conviction for DUI in New Hampshire. Id. at 710-11.

Applying Hull's elements-based approach to the present matter, in order to convict the defendant of OUI in Maine, the prosecution needed to prove beyond a reasonable doubt that she: (1) operated or attempted to operate a motor vehicle; (2) while under the influence of intoxicants or while having a blood-alcohol level of 0.08% or more. Me. Rev. Stat. Ann. tit. 29-A, § 2411, 1-A(A) (Supp. 2007); see State v. Deschenes, 780 A.2d 295, 298 (Me. 2001) (construing a former version of Maine's OUI statute). By contrast, the New Hampshire DUI statute under which the defendant was charged required the State to prove beyond a reasonable doubt that she: (1) drove or attempted to drive a vehicle; (2) upon any way; (3) while under the influence of intoxicating liquor or while having a blood alcohol level of 0.08% or more. See RSA 265-A:2, I.

Thus, New Hampshire's DUI offense requires proof of an essential element that Maine's OUI offense does not — the impaired driving must have occurred upon a "way." Compare id. with Me. Rev. Stat. Ann. tit. 29-A, § 2411, 1-A(A)). Our legislature has defined a "way" as follows:

> any public highway, street, avenue, road, alley, park, parking lot or parkway; any private way laid out under authority of statute; ways provided and maintained by public institutions to which state funds are appropriated for public use; any privately owned and maintained way open for public use; and any private parking lots, including parking lots and other out-of-door areas of commercial establishments which are generally maintained for the benefit of the public.

RSA 259:125, II (2014). The defendant argues that, in light of the foregoing, Hull compels the conclusion that the two offenses are not "reasonably equivalent." That is, because New Hampshire's DUI offense requires affirmative proof that the offense occurred on a "way," while Maine's OUI offense does not, the evidence required to sustain a conviction for Maine's offense would not "necessarily sustain a conviction" for New Hampshire's offense. See Hull, 149 N.H. at 710.

Acknowledging this result under a "narrow" application of Hull, the State points out that this would mean prior impaired-driving convictions from thirty-four other states — including two other New England states (Rhode Island and Connecticut) — and the District of Columbia would not qualify for sentence enhancement under RSA 265-A:18. This is because, like Maine, these jurisdictions do not require affirmative proof that the impaired-driving offense

occurred upon a "way." See, e.g., Conn. Gen. Stat. Ann. § 14-227a (West Supp. 2017); 31 R.I. Gen. Laws Ann. § 31-27-2 (West Supp. 2016). The State argues that drastically limiting the scope of sentence enhancement under RSA 265-A:18 solely on this basis runs counter to the statute's purpose of deterring and more harshly penalizing subsequent acts of driving under the influence in New Hampshire regardless of whether the prior act occurred in this state or another. Cf. Petition of Mooney, 160 N.H. 607, 612 (2010) (recognizing the "purpose of the [DUI] statutes is to prevent the operation of cars by persons under the influence of intoxicating liquor" and upholding an administrative rule effectuating this purpose by permitting imposition of additional conditions on license restoration for individuals with prior impaired-driving arrests (quoting State v. Goding, 126 N.H. 50, 52 (1985))). We are persuaded by the State's argument.

When establishing and applying the elements-based approach in Hull, we did not have occasion to consider the significance of an element, such as the "way" element, which has, at most, only a tangential relationship to the harm the statute is designed to guard against. This was so because, like New Hampshire's offense, Massachusetts's OUI offense contains a "way" element. See Hull, 149 N.H. at 710-11; Mass Gen. Laws Ann. ch. 90, § 24(1)(a)(1) (West Supp. 2017). Though historically the definition of "way" applicable to our DUI statutes limited the prohibition against impaired driving to New Hampshire's "public" highways or ways, see, e.g, State v. Tardiff, 117 N.H. 53, 56 (1977); State v. Rosier, 105 N.H. 6, 7-9 (1963); State v. Gallagher, 102 N.H. 335, 336 (1959), its definition underwent a significant expansion in 1981. As part of the legislature's larger effort to close "loopholes" and "get tough" on DUI, the definition was expanded to include "private ways among the areas upon which persons may be convicted of [DUI]" in our State. State v. Lathrop, 164 N.H. 468, 470 (2012) (quotations omitted). The breadth of this expanded definition led us to conclude in State v. Lathrop that a marked private road in a lakeside community constituted a "way" because the road was ungated and, therefore, the public could access it even if unauthorized to do so:

> Public safety requires that [DUI] statutes apply to any property to which the public has access. It would be contrary to legislative intent to construe the statute to provide that a private road in a lakeside community that is used by residents, guests, and select invitees is a [DUI]-free zone.

Id.

Similarly, the breadth of the definition of "way" under our DUI statutes leads us to conclude that the element's absence from an out-of-state jurisdiction's impaired-driving offense does not, alone, render that offense nonequivalent to our own. Though there remain private driveways, paths, and roads in New Hampshire upon which an individual may drive while impaired

10

with impunity, this State's expansive definition of a "way" renders them few and far between. It therefore follows that there are also likely to be few, if any, instances in which an out-of-state impaired-driving conviction will stem from operation upon some type of "way" that does not fall within the scope of our definition. To permit these rare instances to prohibit sentence enhancement for prior impaired-driving convictions from the majority of out-of-state jurisdictions would be, in our opinion, to construe RSA 265-A:18 to require out-of-state jurisdictions' offenses to be "identical," and not simply "reasonably equivalent," to our own. Consequently, we hold that, although it remains an essential element of proof for a conviction under our DUI offense, the "way" element is immaterial to the "reasonably equivalent offenses" determination under Hull. We do not agree with the dissent's view that, in reaching this result, we are violating the principles of stare decisis. We remain committed to the elements-based approach to equivalency that we adopted in Hull. We merely recognize today a narrow exception to this approach for cases, such as this one, where the non-equivalent element has little, if any, bearing on the harmfulness of the conduct proscribed.

Accordingly, turning to a comparison of the pertinent elements of the two offenses, it is apparent that the offenses of New Hampshire and Maine are "reasonably equivalent." Compare RSA 265-A:2, I, with Me. Rev. Stat. Ann. tit. 29-A, § 2411, 1-A(A). Specifically, because both offenses require proof that a defendant (1) drove/operated or attempted to drive/operate a motor vehicle (2) while under the influence of intoxicating alcohol and/or drugs or while having a blood alcohol level of 0.08%, the evidence required to sustain a conviction for Maine's OUI offense would necessarily prove all elements of New Hampshire's DUI offense other than the "upon a way" requirement. Cf. Hull, 149 N.H. at 710-11.

Thus, we conclude that the trial court did not err in sentencing the defendant as a subsequent offender pursuant to RSA 265-A:18, IV. In light of our holding in this case, we need not determine whether the trial court erred by considering the conduct underlying the defendant's Maine OUI conviction when applying the Hull elements-based approach. But cf. Descamps v. U.S., 133 S. Ct. 2276, 2287-89 (2013) (discussing the rationale behind the establishment of an elements-centric, formal categorical approach — as opposed to a fact-specific approach — to whether a prior conviction qualifies as one of the enumerated predicate offenses under the Armed Career Criminal Statute, 18 U.S.C. § 924(e)).

Affirmed.

DALIANIS, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred; HICKS, J., concurred in part and dissented in part.

11

HICKS, J., concurring in part and dissenting in part. Although I concur fully in Sections II and III of the majority's opinion, I respectfully dissent from Section IV because I believe that principles of stare decisis require us to adhere to the elements-based approach adopted and applied in State v. Hull, 149 N.H. 706, 708-11 (2003). I can appreciate the State's concern that straightforward application of this approach, both presently and prospectively, would leave it incapable of seeking sentence enhancement penalties against DUI offenders with prior impaired-driving convictions from several out-of-state jurisdictions. I can also appreciate why the majority shares this concern and, therefore, elects to modify Hull to allay it.

The doctrine of stare decisis, however, "demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." State v. Quintero, 162 N.H. 526, 532 (2011) (quotation omitted). "Indeed, principled application of stare decisis requires a court to adhere even to poorly reasoned precedent in the absence of some special reason over and above the belief that a prior case was wrongly decided." Id. at 539 (quotation omitted). We have identified four factors that this court must consider in determining whether precedent should be overruled or modified. See id. at 532-33. Neither the State in its brief, nor the majority in its well-reasoned analysis and conclusion in Section IV, addresses any of them. See State v. Blackmer, 149 N.H. 47, 49 (2003) (noting that we confine our review to issues that are fully briefed).

Consequently, I would adhere to the elements-based approach delineated in Hull, vacate the defendant's sentence because the evidence required to sustain a conviction under Maine's OUI statute would not "necessarily sustain a conviction," Hull, 149 N.H. at 710, under New Hampshire's DUI statute, and remand to the trial court for resentencing.